would like for rebuttal. Would the clerk call the first case, please? That would be great. Good afternoon. I'm Alastair Newbern from the Vanderbilt Law School Appellate Litigation Clinic. I am appointed Counsel of Record for Appellee Lori Hargis in the first case today, but with the court's permission, argument will be made by third-year law student Michael Griffin, who's been certified under this court's student practice rule. Thank you. You have our permission. Thank you. Thank you, Your Honor. Your Honor. 1-3-5-0-2-0. State Auto Property and Casualty. Insurance Company v. Lori Hargis. Argument is not to be seen. Ms. Combs, the floor is yours. May it please the court. Opposing counsel. Tia Combs, representing State Auto Property and Casualty Insurance Company. Your Honor, I'd like to reserve three minutes for rebuttal. Fine. Thank you. Today, State Auto comes before you requesting a reversal of the Western District of Kentucky's order concerning State Auto's motion for summary judgment regarding its claim of bad faith against Lori Hargis, a convicted felon who plotted and conspired to burn down her home and file false claims for both property damage and bad faith against State Auto, causing hundreds of thousands of dollars in damages. Today, State Auto suggests that the court should reverse the Western District of Kentucky for three reasons. First, State Auto requests that this court level the playing field between insurance companies and insureds, giving an insurance company a remedy equal to that Second, State Auto requests that this court Ms. Combs, let me interrupt your reading for a second. It's not our job to level playing fields. This is a diversity case, right? Yes, Your Honor. The judge was supposed to apply Kentucky law, right? Yes. Now, it seems to me that he did exactly what he was supposed to do. He looked at your arguments and he said there aren't any cases that would support that in Kentucky or anywhere in the United States for that matter, and therefore I'm ruling against you. What possibly is wrong with that? Respectfully, Your Honor, I don't believe that the Western District of Kentucky engaged in the proper analysis in this particular case. If you're looking for magic words, which is probably not your best argument, he didn't say, I am predicting and here's my prediction. But what possibly could be otherwise implicit in what he did do? Your Honor, if we look at what was done below, the court simply gave us a one sentence order that said, we will not entertain a claim for reverse bad faith because of the law stated in Houchen. The law stated in Houchen is of course another law made by the Western District of Kentucky. We believe that if the court had engaged in the analysis of considering what the Supreme Court of Kentucky might have done if it was presented with this issue. You have a single case in the United States that stands for the proposition you want this judge to say that Kentucky would adopt? Your Honor, I don't have a specific case. Single case. Yes or no? No, Your Honor. So how on earth could he be wrong in predicting that Kentucky would create something that no other court in the United States has created? Respectfully, Your Honor, just because no other court in the United States has allowed this claim doesn't mean that no other court in the United States has recognized that there might possibly be a claim. I don't mean to imply that this has never been considered. When judges are asked to try to predict what the law of the state that they're judging would be, they look to see whether the Supreme Court in that state has ruled. No ruling, right? Yes, Your Honor. So then they look to what the intermediate courts have said. Has any intermediate court said, implied, suggested, hinting, whatever you want, that they would adopt this proposition that you're advancing? Your Honor, I do think that that's found actually in the briefs in this case. The appellee has cited to the case of Bank of Turley, which was a case cited in Houchen. In Bank of Turley, in the main brief, the court did say, we're not going to entertain a claim for adverse bad faith in this particular case. However, there was a... Now you're confusing me because you said courts said things in main briefs. I'm sorry. Which is are you directing us to the briefing in a case or the opinion in the case? Your Honor, in this particular case, I'm directing you to the opinion in the Bank of Turley case and specifically to a footnote which was pointed out by Ms. Hargis, which footnote said we will not be entertaining reverse bad faith in this particular case. However, the court in that case said if an appropriate case were presented, for example, an arson case, and this was a specific statement by the court about arson, that they did believe they, and they being the court there, that a cause of action for adverse bad faith might be entertained in that particular circumstance. So is that it? A footnote in a lower court decision that says something might happen in the future. Is that it? No, Your Honor, there are other cases in other jurisdictions where the court has recognized that this might be a possibility, however, haven't allowed it to go all the way to judgment. Tell us what you think is special about this case. What do I think is special about it? To mean, to support having a reverse bad faith claim here. Why is this case different from these other cases that have not allowed a reverse bad faith claim? In this case, I think that there is a particularly egregious case of insurance fraud being committed by the appellee, Ms. Hargis. She presented a claim for over $900,000. She caused hundreds of thousands of dollars to be spent by state auto in investigating her claim. Although she knew her claim was false, she knew at all times that she had paid a gentleman to burn down her house. But isn't that true of all arson cases? That any insured who's making a claim when the insured has committed arson is knowingly causing the insurance company they hope to pay them. That's true. However, in this case, Ms. Hargis really doubled down on that because she also presented a claim for bad faith against state auto for over $8 million. Defending just that claim cost state auto over $80,000. She sought extensive discovery. She of course put a very high risk bet on the table for state auto to have to play against there by saying she wanted $8 million. It's a very scary thing for an insurance company or for anyone to be sued for $8 million. She did that even though she knew her claim was false. Do you need to have the reverse bad faith claim in order to recover for those damages that the insurance company has suffered? Or is there any other vehicle that you can use to obtain compensatory damages for those wrongs? There are other vehicles and I will admit in this particular case, Ms. Hargis was federally prosecuted and was ordered to pay restitution to state auto. Also the Western District of Kentucky ordered her to pay any additional monies which might be owed to state auto in compensatory damages. So those costs that your insurance company suffered will be paid assuming that she has any assets? Yes, Your Honor. However, in this particular case, what state auto is seeking is a remedy to encourage insurance to act in good faith in the first place. That's the remedy that is given to insureds toward insurance companies. But you just said that you want this in this case. What distinguishes this case to establish the rule is its egregious nature. But then you've said we want it then for all cases. It would be, if established here, it would be a remedy that would be applied in any case. However, we do believe that it would be only a very egregious case where the insurance company would apply it. For example, an insurance company would have to have... This is solely in the hands of the insurance company. Well, yes. It would be in the hands of the insurance company as the plaintiff to a claim for reverse bad faith. Just as now it's in the hands of the insured to file their own claim for bad faith against the companies. Which is historically rooted on this significant imbalance in the bargaining power between insurance companies and the insureds, right? Your Honor, that is true. However, I would postulate to you... Has there been any suggestion that the same reason that allows a bad faith claim to be made by a policyholder would apply to a bad faith claim by an insurance company? Your Honor, respectfully, we believe that there is such a reason. Once an insured files a claim that she knows is fraudulent, as in this case, she has put the insurance company... Which is every arson case where you seek insurance, right? Yes. So that's every case. There's nothing unusual about that. Yes, every arson case, yes, the person is seeking a false claim. And once that happens, once the insured begins... Every time somebody submits a whiplash claim in a car accident that really wasn't hurt, same thing. False claim. Well, Your Honor, particularly in this case, we are asking for a first party bad faith cause of action. So a whiplash claim would be a claimant who's a third party. So I don't believe that that's specifically what's being requested here today. However, once someone submits a false claim, the insurance company is in a poor bargaining position. The insurance company doesn't know the true facts. The person submitting the claim does. And the insurance company is forced to trudge along with that insured through the investigation process, perhaps spending hundreds of thousands of dollars, as was spent here, to uncover the true facts. That should not be the case. The case should be that the insured is encouraged at the front of the case, at the front of the claim investigation process before there even is a legal case. So really, your company doesn't investigate claims? Somebody submits a claim for them, they just pay it? No, Your Honor, but it's a very different... You investigate all claims, don't you? All claims are investigated. However, a claim that is fraudulent, the investigation is much, much more difficult because you don't have the cooperation of the policyholder. Once the policyholder begins to lie, the investigation is magnified because that's no longer the best witness. Usually the policyholder is the best witness. The claimant is the best witness. Now that witness is eliminated. Other sources have to be sought. At the risk of stating your case for you, there are commentators that have talked about maybe this would be a good idea. The plaintiff's bar has used bad faith claims as the thumb on the scale for a long time. Insurance companies would like a little equalizer there. This looked like an egregious situation. Not only arson, but the chutzpah to bring a bad faith claim against you. This was as good a vehicle as you were going to find to take a run at it. That's about the size of it, isn't it? Well, Your Honor, I agree with that. This is the most egregious case that I've ever seen in my office. It's the most egregious case that I've ever found any practitioners that have seen. I would take caution to saying that this is something that we're just coincidentally bringing up now. This is something that is provided for in Kentucky law. In first party bad faith claims in general, the Supreme Court of Kentucky noted that at the very beginning of the creation of first party bad faith claims, there was no law regarding bad faith on the part of the insurance companies that the insurance could bring a claim against. However, the Kentucky Supreme Court created that law whole cloth. Today, what we're asking is simply that this court give the same opportunity to an insurance company. Give an insurance company an opportunity to level the playing field. To ask it's insured to act in good faith at the beginning of a case so that everything can be investigated properly so the insurance company can have a fighting chance of settling claims. What would be the remedy if we agreed with you in this case? What would you have us do? Your Honor, the remedy in this particular case, and I see that I'm out of time. I suppose you want me to answer. Yes. In this particular case we would ask for the case to be remanded back to the district court with the instructions to properly consider the case under the reverse elements of those stated for insurance companies in the case of Whitmer versus Jones. So those would be the elements we would ask that the court remand the case with instructions to analyze the case against Ms. Hargis in that same manner but with the elements reversed. Well, here's why I'm asking the question. If your claim here is that Judge McKinley didn't accurately predict, excuse me, if your claim is that he failed to predict, to make a prediction as to what the Kentucky highest court would do, that's your claim, right? Yes, Your Honor. Why wouldn't we simply be remanding back to him to say, go do what the insurance company claims you were supposed to do that you didn't do, i.e. make a prediction. That's the relief you're seeking, isn't it? Your Honor, I think that's, that would be fair. So how are we establishing Kentucky law? And why, and even if we had to, why would we want to do that? As you say at the beginning of the argument, the Western District of Kentucky most likely believes that they have entertained that analysis and it's just not written in their order. So what we're asking is that that analysis be undertaken by this court and then sent back down to the lower court for application to this particular set of facts. Wait a minute, we make what analysis of what Kentucky law actually is? What the Supreme Court of Kentucky would do if presented with this same claim under these same circumstances. Thank you. Thank you very much. Good afternoon, Your Honors. Again, Michael Griffin on behalf of Ms. Hargis. May it please the court. As Judge McKeague noted, no court has ever recognized the tort of reverse bad faith. Now this court needn't analyze Kentucky law, but if it does, then this court can be confident that Kentucky would not be the first jurisdiction ever to recognize this cause of action for at least two reasons. First, although Kentucky has never addressed this exact issue, it has made clear that bad faith is a narrow tort that applies only to entities in the business of insurance. Second, the five courts that have considered this exact issue have uniformly rejected reverse bad faith. What about the footnote in the lower Kentucky appellate court? Which footnote, Your Honor? Whatever footnote Ms. Collins was referring to. That was actually in the Oklahoma Supreme Court, was that footnote. Now the case in there, First Early Bank, that case was in the Oklahoma Supreme Court on certification from district court. And that's why the court made sure to carve out its narrow analysis, because the issue simply wasn't before the court in that case. The only certified question was whether Oklahoma would recognize a comparative bad faith defense, not an inverse bad faith. So that's why Oklahoma made sure to note that it was not ruling on reverse bad faith tort, because that question simply wasn't before the court in that case. Your opponent's basic argument is leveling the playing field. That we should treat insurance companies just like the insured people are treated. They can raise bad faith claims. Why shouldn't an insurance company be able to have a reverse bad faith claim? Well, I would say three things, Your Honor. First, the playing field was initially unequal, and the bad faith tort was meant to do just that, to level that playing field. It was a thumb on the scales that policy holders needed to level the playing field. Now more directly to your point about the harm of this particular tort, if the court were to recognize it. First, it's unnecessary, because the Kentucky law already provides full compensation for insurance companies who are the victim of fraud, and Kentucky criminal law already provides ample punishment, as Ms. Hargis was subject to here. More importantly, arming insurance companies with the threat of reverse bad faith would further distort the economic advantages that they already enjoy in settlement negotiations and claims adjusting. It would invite the very kinds of abusive practices that the Unfair Claims Settlement Practices Act, the Consumer Protection Act, and the bad faith tort were designed to protect against. So your opponent was mentioning several costs that this insurance company suffered as a result of the fraudulent claim of your client. How exactly would the insurance company recover those through what vehicle? There are several vehicles, Your Honor. So in this case where the criminal prosecution occurs in federal court, there's a federal statute that provides for mandatory restitution. That's one avenue, and that was the avenue that was applied in this case. So was the restitution, in fact, sufficient to cover these added costs, or was the restitution some lower number? The restitution was the full amount that state auto had accounted for. It was $672,000 and some change. Now in addition to that restitution judgment, they also got a civil judgment in the Kentucky courts, in the district court here, for a civil fraud claim. And the amount of that civil judgment was unspecified, but it was to the extent that state auto was not fully compensated by the restitution award. So just in case there were any costs that state auto actually incurred that were not accounted for in the restitution award, the civil judgment provides a backstop in that case. And that's available in every insurance fraud case per Kentucky statute. So how does the insurance company prove its damages then? Is the civil case in the federal court kept open so that the amount of restitution and the amount of damages can be compared? It's not kept open, Your Honor, no. But in this case state auto has already provided a full accounting to the Indiana district court when it received its restitution award. So if there are any other additional damages that it believes it has not been compensated for, then it should have raised those additional damages before Judge McKinley and the district court below here. That would have been the time to do that. Because they had not specified any particular damages that were not covered by the restitution award, that's why Judge McKinley was not able to award an actual dollar figure and instead just provided the broad language that they would be recovered for any additional harm not included in the restitution award. But Kentucky law provides for adequate compensation to insurance companies when they have suffered a loss. So how does this freestanding bad faith tort, if the insurance company prevails in this case, differ from what you're describing where the remedies are already available to the insurance company, at least as you understand their claim? It would not differ in large part in terms of conduct covered. The conduct that's already covered by the insurance fraud statute would likely be the same conduct covered by a bad faith independent tort. The key difference here is the remedy available. The Kentucky statute for insurance fraud provides only restitution and compensatory damages. The whole reason state auto is bringing this claim is because they want punitive damages on top of that. Now the Kentucky statute for insurance fraud statute omitted punitive damages. And Kentucky cases have held that where a statute specifies the wrongful conduct and sets forth the remedies to the aggrieved party, quote, the aggrieved party is limited only to the remedies in the statute. That shows a clear indication from the Kentucky General Assembly that policyholders should not be subject to punitive damages for insurance fraud. Because at its heart that is still a contractual relationship. And the general rule codified in another Kentucky statute is that in no case shall punitive damages be awarded for a breach of contract. And at its core that's all we have here. So is that inferentially then what your client was seeking when she made the $8 million claim of bad faith? That was punitive damages? That was punitive, yes. Her initial claim under the insurance policy was for $866,000. And then roughly an additional $7.5 million in punitive damages for the bad faith claim that was brought when Ms. Hargis removed the case to the federal courts. She had initially just claimed her actual losses under the policy. And to be clear, no one is defending Ms. Hargis' actions in this case. Conceitedly she submitted a fraudulent claim. State Auto suffered harm and no one denies that. But Kentucky law already provides adequate remedies to fully compensate State Auto or any other insurer for any actual harm that they suffered. To provide them with the windfall of punitive damages and to further distort the imbalance of power that already exists would be unnecessary and would be contrary to public policy in Kentucky. And that's the same reason that the five courts to consider this issue have rejected it. It turns not on the conduct of the parties, but on the relationship between a company. The fact that the insurance company holds the purse strings, they have all the power, and a policyholder depends upon them to uphold their end of the bargain after they've suffered a loss. Now we're sitting in diversity and I believe that your opponent asked that this question be certified to the State Supreme Court. Should we do that? No, Your Honor, this court should not do that. First, this court disfavors certification when it's used as a second bite at the apple after an adverse judgment below. The proper time to ask for certification would have been before Judge McKinley ruled against State Auto. But even so, it's still within this court's power to do so now if it were so inclined. But certification is only appropriate for a truly novel and unsettled question. This is simply not one of those questions. Every court to ever consider this cause of action has rejected it and there is absolutely no indication anywhere in Kentucky law, be it decisional law or the Kentucky statutes, that indicates Kentucky would act any differently. So this court can confidently predict that if the Kentucky Supreme Court did address this issue, it would soundly reject it. And indeed, in one of the cases limiting the bad faith cause of action, the court did just that. In the Davidson v. American Freightways case, the Kentucky Supreme Court was asked to extend bad faith against self-insured and uninsured individuals. And the court soundly rejected that. And in doing so, they spoke very broadly. They said that both the bad faith and the statutory claim apply only to entities in the business of insurance. Now in speaking much more broadly than the court had to there, it provides a clear indication of how Kentucky would view a case like this if it had the opportunity to do so. Do you know if State Auto or any of the other companies that are licensed to sell insurance in Kentucky have tried to change the Kentucky law to add punitive damages? I'm not aware of any attempts by the insurance companies in Kentucky, whether through the legislature or through common law to get punitive damages added. No. And for those reasons, if there are no additional questions, we ask that this court affirm Judge McKinley's rejection of reverse bad faith below. Thank you. Your Honor, State Auto comes today before this court asking this court to make false claims by insureds, false bad faith claims by insureds such as Ms. Hargis a higher stakes games than they are today. As it stands today, a claimant such as Ms. Hargis can file a bad faith claim against a company like State Auto with no stakes at all. She can hire an attorney who will take her claim on contingency. She won't outlay any money at all, any funds. And she forces the insurance company into a very expensive investigation, the cost of which is obviously passed on to other policy holders. Why do you suppose Kentucky doesn't include that in their statutory law? The statutory law that is present in Kentucky today does allow the insurance company to recover all those costs for investigation. And I think that that is what the legislature that must have been what they wished to do at that time in enacting that law which is part of the entire insurance fraud scheme of laws in Kentucky which seeks to make everybody whole. In this case, what we're asking is for an encouragement for that to never even be needed. For an encouragement for policy holders to do the right thing from the beginning. To act in good faith at the start of a case. Would you say that asking a court to create encouragements is a legal matter or a policy matter? Your Honor, I do believe that it's a policy matter. Bad answer. If it's a policy matter, then how do you isn't that inherently why policy goes to a deliberative legislative body that can hold hearings and get conflicting and divergent views versus asking a court to set policy? Well, Your Honor, the insurance fraud statute in Kentucky is part of a greater scheme of laws addressing fraud. Its purpose is to make people whole. Its purpose is to pay back those compensatory damages such as investigation costs, such as monies paid out. Its purpose isn't and it just doesn't address the purpose of encouraging good faith on the front end. It's a redress. It gives redress to insurance companies who've been defrauded by their policy holders. What it doesn't do is even get close to encouraging the good faith in the beginning and it just simply doesn't address that. It's not that it's not said, it just doesn't address it. Additionally, I take issue with... I think your opposing counsel said that the legislature was asked to include punitive damages and didn't, although I may not be recalling that correctly. Your Honor, I'm not aware of that. However, he's correct that it doesn't include that. However, I would ask this court to consider that just because something is not addressed there doesn't mean that it wouldn't be addressed should the legislature have a chance to pass on it at a later time. And in Kentucky, bad faith law... I see that I'm out of time. May I finish? You can conclude, yes. In Kentucky, bad faith law began with the court system. It began with the Supreme Court of stating that it saw wrong for which there was no redress in insurance companies withholding funds that were duly owed to insureds. In this case, we're asking that that process be started again the other way. You've conceded that there was a wrong and that there is redress. You want something more. You want an incentive that doesn't have anything to do with the parties in this case that will affect future claimants in other cases, right? Your Honor, is the policy of Kentucky law to give deterrence? That is the redress we're seeking here is the deterrence of punitive damages. That's all. Thank you, Your Honor. Thank you both for your argument. The case will be submitted.